UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JIMMIE ARELLANO and
MARTHA ARELLANO,
    Debtors.                                       No. 13-06-11966 SL

JIMMIE ARELLANO, et al.
    Plaintiffs,
v.                                                    Adv. No. 07-1024 S

AMOS MONTOYA, et al.
    Defendants.

**MEMORANDUM OPINION ON DEFENDANT**
**CITIFINANCIAL, INC.'S DEMAND FOR ARBITRATION**

This matter is before the Court on Defendant Citifinancial's Demand for Arbitration. At the initial pretrial conference the Court instructed the parties to submit briefs. Citifinancial (doc 10), First American Title Insurance Co. (doc 14) and Plaintiffs (doc 15) filed briefs. Citifinancial filed a reply (doc 23). The Court finds that Citifinancial's demand is well taken and that this adversary proceeding should be stayed as to Citifinancial.[1]

**FACTS**

On or about April 5, 2002, the Plaintiffs executed a 4-page note in the principal amount of $64,098.03 to Citifinancial, bearing interest at an 8.76% variable rate calling for 360 monthly payments and to be secured by a security interest in real

---

[1] This adversary proceeding stems from the Plaintiff/Debtors having participated in a closing to purchase their home and later discovering that the funds intended to pay off the existing mortgage were not delivered to the mortgagee and thus that the existing mortgage lien was never released.

property (Plaintiff's residence).  Pages 3 and 4 consist entirely of a "Notice of Arbitration Provision" that details an agreement to arbitrate any "Claim" (as defined in the notice).

On May 9, 2006, Plaintiffs filed a voluntary chapter 7 proceeding in the District of New Mexico, No. 7-06-10741.  The deadline for objections to discharge or dischargeability was October 21, 2006.  No objections were filed.  Debtors received a discharge on November 20, 2006 (doc 34).

Meanwhile, on October 25, 2006, Plaintiffs filed a voluntary chapter 13 proceeding in the District of New Mexico, No. 13-06-11966.  On November 20, 2006 Plaintiffs filed their Statements and Schedules.  Citifinancial is listed as a disputed, contingent secured creditor on Schedule D.  On November 20, 2006, Plaintiffs filed their chapter 13 plan ("Plan").  (doc 18 in main case.) Plan provision XII, item 9 states as follows:

> Alternative Dispute Resolution Clauses.  The plan filed by the debtor herein specifically rejects, avoids cancels and otherwise releases the debtor from any and all contractual provisions, with any party or entity, which could or may impose on the debtor any duty, requirement or obligation to submit any and all claims, demands, or causes of action of the debtor or any defenses, affirmative or otherwise, of any nature whatsoever, whether known or unknown, and whether arising pre-petition or post-petition, to any form of binding attribution (sic) or alternative dispute resolution.  Consequently, confirmation of this plan shall constitute a finding that any such clauses, conditions or provisions, whether arising under the Federal Arbitration Act or any state rule, statute, or regulation, are invalid, void and otherwise unenforceable as to the debtor or the Chapter 13 Trustee.  Acceptance by creditors of payments under

> this plan and/or failure of any creditor to file an
> objection to confirmation of the plan herein,
> constitutes waiver of any right(s) of said creditor(s)
> to seek enforcement or any arbitration agreement and
> constitutes consent to the removal of any arbitration
> clause from any type of contract or contracts with the
> debtor herein.

The Plan nowhere mentions Citifinancial by name, and proposes no distributions to Citifinancial. The Plan was sent out on 25 day notice to creditors pursuant to Federal Bankruptcy Rule 2002. Citifinancial did not object to confirmation. Citifinancial did not file a proof of claim. Several other creditors did object to confirmation, and the Plan is not yet confirmed.

On February 14, 2007, the Plaintiffs filed the current adversary proceeding, which is related to the chapter 13 case.[2] Citifinancial is one of the named defendants in the adversary proceeding; Coount One is directed solely at Citifinancial and is captioned "Claims for Breach of Contract, Fraud, Negligence, Prima Facie Tort, and RESPA Violations against Defendant Citi and for the Bankruptcy Court to Determine the Extent and Validity of the Mortgage Lien Asserted by Citi." Citifinancial has demanded enforcement of the arbitration provision.

The Adversary Proceeding alleges that it is a core proceeding. (Doc 1 ¶ 2). Citifinancial denies core status and

---

[2] The chapter 7 trustee has since filed a motion to intervene in this adversary and that motion was granted on May 15, 2007. Standing is not an issue for the purposes of this Memorandum.

does not consent to entry of final orders by the Bankruptcy Court (Doc 5 ¶ 2).

**CONCLUSIONS**

In Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-27 (1987), the United States Supreme Court found a strong federal policy favoring arbitration in the federal courts:

> [The Federal Arbitration Act, 9 U.S.C. § 1 et seq.] was intended to "revers[e] centuries of judicial hostility to arbitration agreements," Scherk v. Alberto-Culver Co., supra, 417 U.S., at 510, 94 S.Ct., at 2453, by "plac[ing] arbitration agreements 'upon the same footing as other contracts.' " 417 U.S., at 511, 94 S.Ct., at 2453, quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924). The Arbitration Act accomplishes this purpose by providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal district court to issue an order compelling arbitration if there has been a "failure, neglect, or refusal" to comply with the arbitration agreement, § 4.
> The Arbitration Act thus establishes a "federal policy favoring arbitration," Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring that "we rigorously enforce agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, supra, 470 U.S., at 221, 105 S.Ct., at 1242. This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights...
> The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial

remedies for the statutory rights at issue. See [<u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354 (1985)]. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," <u>ibid.</u>, or from an inherent conflict between arbitration and the statute's underlying purposes. <u>See</u> <u>Id.</u>, at 632-637, 105 S.Ct., at 3356-3359; <u>Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S., at 217, 105 S.Ct., at 1240.

Later Courts have summarized this Supreme Court passage as a "three factor test" of Congressional intent: (1) the text of the statute; (2) its legislative history; and (3) whether an inherent conflict between arbitration and the underlying purposes of the statute exists. <u>See, e.g., Whiting-Turner Contracting Co. v. Electric Machinery Enter., Inc. (In re Electric Machinery Enter., Inc.)</u>, 479 F.3d 791, 795-96 (11th Cir. 2007). (Citations omitted.) Neither the text of the Bankruptcy Code or its legislative history evidence a Congressional intent to create an exception to the Federal Arbitration Act in the Bankruptcy Code. <u>Id.</u> at 796. Therefore, in the bankruptcy context, the issue is whether arbitration would conflict with the underlying purposes of the Bankruptcy Code. <u>Id.</u>; <u>see also</u> <u>In re Gandy</u>, 299 F.3d 489, 495 (5th Cir. 2002):

> A bankruptcy court does possess discretion, however, to refuse to enforce an otherwise applicable arbitration agreement when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purpose of the Code.

(Citation omitted.)

> Courts addressing the issue of whether arbitration inherently conflicts with the Bankruptcy Code distinguish between core and non-core proceedings. See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1156-57 (3d Cir. 1989). In general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding. See Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.), 226 F.3d 160, 166 (2d Cir. 2000). However, even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code. See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum), 118 F.3d 1056, 1067 (5th Cir. 1997).

Electric Machinery Enter., 479 F.3d at 796.

Therefore, under this methodology, the Court first determines whether a proceeding is core or non-core. If it is non-core, the Bankruptcy Court must stay the proceeding in favor of arbitration. If it is core, the Bankruptcy Court undertakes a further analysis to determine if arbitration would conflict with the purposes of the Bankruptcy Code.

In this case, the Court finds that Count One of the adversary proceeding is a non-core proceeding[3]. First, a quick review of bankruptcy jurisdiction follows.

---

[3] The determination of core status itself is, however, a core proceeding on which the Bankruptcy Court can enter a final order. See 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine ... whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."). See also Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.), 152 B.R. 667, 672 n.6 (Bankr. M.D. Fla. 1993) ("The determination of core is a core matter....").

Bankruptcy Court jurisdiction is established by 28 U.S.C. § 1334, which lists four types of matters over which the district court has bankruptcy jurisdiction: 1) cases "under" title 11 (which are the bankruptcy cases themselves, initiated by the filing of a Chapter 7, Chapter 11, etc. petition), 2) proceedings "arising under" title 11 (such as a preference recovery action under §547), 3) proceedings "arising in" a case under title 11 (such as plan confirmation), and 4) proceedings "related to" a case under title 11 (such as a collection action against a third party). Wood v. Wood (In re Wood), 825 F.2d 90, 92 (5th Cir. 1987). In the District of New Mexico, all four types have been referred to the bankruptcy court. See 28 U.S.C. § 157(a); Administrative Order, Misc. No. 84-0324 (D. N.M. March 19, 1992).

Jurisdiction is then further broken down by 28 U.S.C. § 157, which grants full judicial power to bankruptcy courts not only over cases "under" title 11 but also over "core" proceedings, §157(b)(1), but grants only limited judicial power over "related" or "non-core" proceedings, §157(c)(1). Wood, 825 F.2d at 91; Personette v. Kennedy (In re Midgard Corporation), 204 B.R. 764, 771 (10th Cir. B.A.P. 1997). This core/non-core distinction is important, because it defines the extent of the Bankruptcy Court's jurisdiction and the standard by which the District Court reviews the factual findings. Halper v. Halper, 164 F.3d 830, 836 (3rd Cir. 1999).

Page -7-

"Core" proceedings are matters "arising under" and "arising in" cases under title 11. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. Matters "arise under" title 11 if they involve a cause of action created or determined by a statutory provision of title 11. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. Matters "arise in" a bankruptcy if they concern the administration of the bankruptcy case and have no existence outside of the bankruptcy. Wood, 825 F.2d at 97; Midgard, 204 B.R. at 771. Bankruptcy judges may hear and determine core proceedings and enter final orders and judgments. 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2) contains a nonexclusive list of 15 types of core proceedings.

"Non-core" proceedings are those that do not depend on the bankruptcy laws for their existence and that could proceed in another court even in the absence of bankruptcy. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. "Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." Celotex Corporation v. Edwards, 514 U.S. 300, 307 n.5 (1995).

Bankruptcy courts have jurisdiction over non-core proceedings if they are at least "related to" a case under title 11. 28 U.S.C. § 157(c)(1)("A bankruptcy judge may hear a

Page -8-

Case 07-01024-s    Doc 30    Filed 06/14/07    Entered 06/14/07 15:09:28 Page 8 of 15

proceeding that is not a core proceeding but that is otherwise related to a case under title 11.")  However, unless all parties consent otherwise, 28 U.S.C. § 157(c)(2), bankruptcy judges do not enter final orders or judgments in non-core proceedings. Rather, they submit proposed findings of fact and conclusions of law to the district court, which enters final orders and judgments after de novo review.  28 U.S.C. § 157(c)(1); Federal Bankruptcy Rule 9033.  See also <u>Orion Pictures Corporation v. Showtime Networks, Inc. (In re Orion Pictures Corporation</u>), 4 F.3d 1095, 1100-01 (2nd Cir. 1993)(discussing Section 157's classification scheme).

28 U.S.C. § 157(b)(2) gives a nonexclusive list of 16 "core proceedings."  The fact that a matter is listed among the "core proceedings" of 28 U.S.C. § 157(b)(2) cannot end the inquiry, however.  In <u>Northern Pipeline Construction Co. v. Marathon Pipe Line Company</u>, 458 U.S. 50, 76 (1982), the United States Supreme Court ruled that Article III of the Constitution "bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws."  In <u>Marathon</u>, the debtor sought damages for alleged breaches of contract and warranty, misrepresentation, coercion, and duress.  <u>Id.</u> at 56.  The Supreme Court distinguished this adjudication of "state-created private rights" from the "restructuring of debtor-creditor relations, which is at the core

Page -9-

of the federal bankruptcy power." Id. at 71. The Court found that the broad grant of jurisdiction to the bankruptcy courts found in 28 U.S.C. § 1471 (1976 ed., Supp.IV) was unconstitutional because it "impermissibly removed most, if not all, of the 'essential attributes of the judicial power' from the Art. III district court" and vested those attributes in the bankruptcy court. Id. at 87. Congress responded with the current jurisdictional scheme which categorizes matters as either core or non-core. Any determination by the Bankruptcy Court of the core status of a matter should be done with the dictates of Marathon in mind.

Plaintiffs' Count One is all based on state or federal law, with the possible exception of the request to determine the validity, extent, and priority of Citifinancial's lien against Plaintiffs' residence. The state and federal law claims all existed before the first bankruptcy case was filed, and are pre-petition causes of action. The state and federal law claims are not a case under title 11 because they were not initiated by a bankruptcy petition. Nor do the state and federal law claims arise under a provision of title 11 nor did they come about during a case under title 11. The state and federal law claims are related to a case under title 11 because, if Plaintiffs are successful, the bankruptcy estate would be increased. The state and federal law claims are not "core."

Plaintiffs' request to determine the validity, extent, and priority of Citifinancial's lien raises a more difficult question. 28 U.S.C. § 157(b)(2)(K) specifies that a proceeding to determine the validity, extent, or priority of a lien is a core proceeding. As noted above, however, the Court must keep the dictates of Marathon in mind.

> It is generally accepted that a core proceeding is one which "invokes a substantive right provided by title 11 or [ ] is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." In re Wood, 825 F.2d 90, 97 (5th Cir. 1987); see also In re Riverside Nursing Home, 144 B.R. 951, 955 (S.D. N.Y. 1992); In re J.T. Moran, 124 B.R. 931, 937 (S.D. N.Y. 1991); In re Brooks Fashion Stores, Inc., 124 B.R.436 (S.D. N.Y. 1991); In re Braniff International Airlines, Inc., 159 B.R. 117, 125 (E.D. N.Y. 1993). The Second Circuit has refined this analysis by stating that "[t]he relevant analysis is whether the nature of [the] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." In re Manville Forest Products Corp., 896 F.2d 1384, 1389 (2d Cir. 1990) (holding that adversary proceeding arising from proof of claim filed with bankruptcy court was core despite fact that it involved breach of contract) (citing In re Wood, supra )(emphasis in original).

Hassett v. Bancohio Nat'l Bank (In re CIS Corp.), 172 B.R. 748, 755-56 (S.D. N.Y. 1994). The mere characterization of a proceeding as core is not dispositive of whether it is core. Hudgins v. Shah (In re Systems Engineering & Energy Mgt. Assoc., Inc.), 252 B.R. 635, 642 n.2 (Bankr. E.D. Va. 2000). See also Mugica v. Helena Chemical Co. (In re Mugica), ___ B.R. ___, 2007 WL 466602, *3 (Bankr. S.D. Tex. 2007):

> The form of this adversary proceeding does not invoke
> the special powers of bankruptcy or raise any primary
> issues in bankruptcy. The substance of the suit is
> based entirely on state law. While a final judgment in
> Debtor's favor may create additional funds for the
> estate, this suit involves neither a right particular
> to bankruptcy nor does it arise strictly in a
> bankruptcy context. Accordingly, the Court finds this
> suit does not constitute a core proceeding.

The Plaintiffs here are not seeking to use any provision of the Bankruptcy Code to determine the validity, extent, or priority of Citifinancial's lien. Rather, the result of the state court causes of action will dictate that result. If Plaintiffs succeed on their state law claims, Citifinancial will not be a creditor and the result will be that the lien will be void, or avoided, or avoidable. It is only through Plaintiffs' use of semantics that this claim could be called a core proceeding. The Court should examine the substance of what is sought, not the language used in the complaint.

> Both sides caustically criticize each other's use of
> "semantics" to obscure the real issues. I agree that
> it is useless to categorize the claims by means of the
> words used to describe them. In making my
> determination I will look beyond the labels to the
> substance of the action in order to discover whether it
> can be fairly said to arise under the bankruptcy code
> and falls within the bankruptcy court's core
> jurisdiction. See e.g. In re Treadway, 117 B.R. 76, 81
> (Bankr. D. Vt. 1990) (mere characterization of claims
> within the terms of the bankruptcy statute is not
> dispositive of core/non-core determination).

Hassett, 172 B.R. at 756. The substance of Count One is non-core.

Case 07-01024-s    Doc 30    Filed 06/14/07    Entered 06/14/07 15:09:28 Page 12 of 15

Plaintiffs argue that Citifinancial waived its right to arbitration by not objecting to a provision in the Debtors' chapter 13 plan which provided for such a waiver. The Court finds this argument not well taken. First, the chapter 13 plan that provided for the waiver has not been confirmed, so cannot be res judicata or issue preclusive. Second, Citifinancial's not objecting to the plan is not sufficient evidence of a voluntary relinquishment of a known right in these particular circumstances; e.g., when the Debtors and Citifinancial were specifically litigating the arbitration issue. Third, the Court finds that this provision in the plan is reminiscent of the student loan chapter 13 cases that attempted to discharge student loans through confirmation. See, e.g., Andersen v. UNIPAC-NEBHELP (In re Anderson), 179 F.3d 1253, 1260 (10th Cir. 1999)(holding that chapter 13 plan that contained a finding that excepting student loans from discharge would impose an undue hardship in fact discharged the student loans).[4] Compare In re Poland, 382 F.3d at 1189 (holding that chapter 13 plan that contained no finding that excepting student loans from discharge in fact does not discharge student loans). In this case, the

---

[4] This holding of Andersen has been distinguished, e.g., Banks v. Sallie Mae Servicing Corp. (In re Banks), 299 F.3d 296, 301-302 (4th Cir. 2002), and widely criticized. E.g., Poland v. Educational Credit Mgt. Corp. (In re Poland), 382 F.3d 1185, 1189 n. 2 (10th Cir. 2004) ("The panel is of the view that Andersen was wrongly deciced and should be reconsidered.").

Page -13-

Plan was never confirmed, so there was never a finding that the arbitration provision should be voided or on what grounds. Finally, the Court questions whether Citifinancial had sufficient due process in this case. The plan was not "served" on Citifinancial; rather, "notice" of the plan was sent to all creditors, including Citifinancial. Debtors are attempting to change the provision of a contract. Arguably this requires an adversary proceeding, but even if it did not, it at least constitutes a contested matter. See Bankruptcy Rule 9014. Contested matters must be "served". Bankruptcy Rule 9014(b). See In re Banks, 299 F.3d at 301:

> Bankruptcy Rule 2002(b) does not require specific notice of plan provisions affecting a particular creditor, nor does it require the notice to be served in any particular manner or upon any particular person. There are many aspects to and actions that may be taken in bankruptcy cases which affect the general administration of the case and all creditors generally, but none specifically. Generally, such matters require "notice," but not service of process. When the rights of specific parties become an issue, however, service of the initiating motion or objection on the affected party is required. Mailing the proposed plans, the hearing notice, and the confirmation order satisfies the "notice" requirement under Rule 2002, but not the service and summons requirements of Rule 7004.

(Citations and internal punctuation omitted.) Because the Plan was not served on Citifinancial, the Court finds that it would deny Citifinancial its due process rights to allow Plaintiffs to unilaterally alter their contract with Citifinancial, at least

where the arbitration issue has not already been resolved between the two parties.

In sum, the Court finds that Count One is a non-core related-to proceeding. Therefore, the Court should stay this adversary proceeding pending arbitration of Count One. Because the Court has determined that Count One is non-core, it need not address the issue of whether arbitration would conflict with bankruptcy policies in this case. An appropriate Order will enter.

/s/ James S. Starzynski
Honorable James S. Starzynski
United States Bankruptcy Judge

copies to:

R Trey Arvizu, III
PO Box 1479
Las Cruces, NM 88004-1479

James A Askew
PO Box 1888
Albuquerque, NM 87103-1888

Robert H Jacobvitz
500 Marquette NW Ste 650
Albuquerque, NM 87102-5309

Paul M Fish
PO Box 2168
Albuquerque, NM 87103-2168

Case 07-01024-s    Doc 30    Filed 06/14/07    Entered 06/14/07 15:09:28 Page 15 of 15