UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JIMMIE ARELLANO and
MARTHA ARELLANO,
    Debtors.                                           No. 13-06-11966 SL

JIMMIE ARELLANO, et al.
    Plaintiffs,
v.                                                              Adv. No. 07-1024 S

AMOS MONTOYA, et al.
    Defendants.

**MEMORANDUM OPINION ON DEFENDANTS
FIRST AMERICAN TITLE CO. AND DONA ANA TITLE CO.
<u>MOTION FOR SUMMARY JUDGMENT</u>**

This matter is before the Court on Defendants First American Title Company ("First American") and Dona Ana Title Company ("Dona Ana") Motion for Summary Judgment (doc 52) and Memorandum in Support Thereof (doc 53). Plaintiffs did not file a response. This is a core proceeding. 28 U.S.C. § 157(b)(2). For the reasons set forth below, the Court finds that the Motion is well taken and should be granted.

Federal Rule of Civil Procedure 56(c)[1] provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact <u>and that the moving party is entitled to a judgment as a matter of law</u>.

(Emphasis added.) Because no response was filed to the Motion no facts are in dispute. See N.M. L.B.R. 7056-1 ("All material

---

[1] Federal Rule of Bankruptcy Procedure 7056 adopts Federal Rule of Civil Procedure 56.

facts set forth in the statement of the movant shall be deemed admitted unless specifically controverted.") Therefore, the issue for the Court is whether the Title Company defendants are entitled to a judgment as a matter of law. The Court finds that under New Mexico law they are.

Only Counts 3 and 4 are involved. Count 3 is against First American only and seeks damages, punitive damages, attorney's fees and costs for breach of contract, fraud, negligence and prima facie tort. Count 4 is against Dona Ana only and seeks damages, punitive damages, attorney's fees and costs for breach of contract, fraud, negligence and prima facie tort.

**FACTS**

The Court finds the following facts to be undisputed:

1. Prior to March 14, 2002 the Arellanos entered into a preliminary agreement to purchase real property owned by Muriel. The Arellanos agreed Montoya would represent them in connection with the transaction. Total Financial was a business owned and operated by Montoya at the time.

2. As part of his representation of the Arellanos, Montoya then contacted First American Title in order to secure a title binder to determine the status of the title. The Arellanos did not, at that time or any time thereafter, speak to anyone associated with First American or Dona Ana Title.

3. Because the title order was only for the issuance of title commitments and title policies, and did not include the title company serving as closing agent, receiving any loan documents, or distributing any funds, the title companies processed the order for a title commitment as a title only order. Because First American was engaged for only a "title only" order, neither First American nor Dona Ana Title prepared any closing documents, prepared any settlement statements, received any closing funds, distributed any of the closing funds, or participated in any respect.

4. In a title only order, on a residence, the title company typically communicates only with the insured's broker, and not directly with the insured.

5. Because the real property was located in Dona Ana County, New Mexico, where First American does not have a title plant, First American contacted Dona Ana Title to do the title work and provide a title binder on First American's behalf, and later to issue a title policy on First American's behalf. Dona Ana Title had no other role in the transaction. Montoya never had any contact with Dona Ana Title.

6. On March 19, 2002, Dona Ana Title issued a title binder, on behalf of First American, which listed the Arellanos as proposed insured, Muriel as the current title holder, and requirements

that included that a deed be recorded in the name of the Arellanos, and a release of the Bank One Mortgage be recorded.

7. About the same time Montoya requested the title binder from First American, he was informed by Georgia Barrett ("Barrett") of CitiFinancial that the Arellanos did not qualify for a purchase money mortgage and could only qualify for a loan from CitiFinancial if the transaction was a refinance transaction.

8. In order for the transaction to look like a refinance transaction, the title to the residence needed to be in the Arellano's name prior to closing. The Arellanos credit application to CitiFinancial, prepared by CitiFinancial, and signed by the Arellanos, reflected the loan as being a refinance. Neither First American nor Dona Ana Title were aware that the transaction was a sale documented as a refinance.

9. On April 2, 2002 Dona Ana Title issued a second title binder, under which the Arellanos and CitiFinancial were the insured, which then listed the Arellanos as the current title holder, and requirements that included that a release of the Bank One Mortgage be recorded.

10. At the closing on April 5, 2002, CitiFinancial acted as the closing agent. Present at the closing were Montoya (the Arellanos' broker), Montoya's wife, Barrett (who worked for CitiFinancial), and the Arellanos. A check was jointly issued to the Arellanos and Total Financial in the amount of $60,000, which

Case 07-01024-s    Doc 54    Filed 02/25/08    Entered 02/25/08 15:37:01 Page 4 of 12

the Arellanos endorsed over to Total Financial. Total Financial then deposited the check into Total Financial's account. CitiFinancial and Montoya had agreed that the check would be payable to jointly to the Arellanos and Montoya's company, and that Montoya would then disburse the money as agreed including to pay off the Bank One Mortgage. Such agreements and practices violate established customs and norms within the title insurance industry.

11. Montoya intentionally did not pay the amount owed on the Bank One Mortgage and used the funds for his personal use and to service the installments due under the Bank One Mortgage for some time.

12. Neither First American nor Dona Ana Title had any knowledge of how funds that the closing were received, disbursed, or that any misappropriation occurred.

13. On April 11, 2002, after receiving the closing documents and after reviewing the county records, Dona Ana Title, on First American's behalf, issued an owners title policy to the Arellanos, which was received by the Arellanos, and a mortgagee policy to CitiFinancial, both of which listed the Bank One Mortgage and outstanding property taxes as exceptions to the policy.

14. It is the policy of First American and Dona Ana Title, when issuing a policy on a title only order that unsatisfied requirements after the closing become exceptions to coverage.

15. Based on industry standards nothing concerning the transaction lead Dona Ana Title or First American to consider there was any problem that would need to be communicated directly to the Arellanos instead of their agent.

16. Montoya continued to service the Bank One Mortgage for years. However, after he was unable to continue to make payments on the loan, Bank One began foreclosure procedures on the property. The Arellanos filed a claim under their insurance policy with First American, however, their claim was denied as an exception to the owner's policy issued April 11, 2002.

**CONCLUSIONS OF LAW**

1. There was no contract between the Arellanos and Dona Ana. Neither the Arrellanos of their agent Montoya ever spoke to any employee or other representative of Dona Ana. Dona Ana did not conduct the closing on the property. The breach of contract claim against Dona Ana should be dismissed.

2. First American did not breach its contract with the Arellanos. It contracted to issue an Owner's Title Commitment, which it did. The Commitment contained certain requirements in Schedule B, Part I, including a release of the Bank One mortgage. It then issued both an Owner's Policy and Mortgagee Policy about

a week after the closing that listed the Bank One mortgage as an exception. First American did not contract to not issue policies if the exceptions were not cleared up. First American fully complied with its duties under the contract. The breach of contract claim against First American should be dismissed.

3. Plaintiff alleges in Count 3 that First American and in Count 4 that Dona Ana breached the implied covenant of good faith and fair dealing. Without deciding whether such a cause of action is even available in this situation[2], the Court finds that these claims should be dismissed under the facts of this case.

"Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." Continental Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. 690, 706, 858 P.2d 66, 82 (1993), cert. denied, 510 U.S. 1116 (1994)(Citation omitted.) "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." Id. "The implied

---

[2] See, e.g., Henning v. Rounds, 142 N.M. 803, 808, 171 P.2d 317, 322 (Ct. App. 2007)(New Mexico does not recognize breach of an implied covenant of good faith and fair dealing as a cause of action in at-will employment relationships, but does recognize it in not at-will employment relationships.) and Ruegsegger v. Board of Regents of Western New Mexico University, 141 N.M. 306, 315, 154 P.3d 681, 690 (Ct. App.), cert. denied, 140 N.M. 845, 149 P.3d 942 (2006)(Specifically not addressing whether a claim for breach of an implied covenant of good faith and fair dealing would be recognized in the case, the Court decided that plaintiff failed to state a claim for it.)

covenant is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." Smoot v. Physicians Life Ins. Co., 135 N.M. 265, 268-69, 87 P.3d 545, 548-49 (Ct. App. 2003).

Because there was no contract between Dona Ana and the Arellanos, there can be no breach of an implied covenant related to a contract. Therefore, this cause of action as to Dona Ana should be dismissed.

As to First American, the Arellanos received what they contracted for, i.e., a title commitment and a title policy. The Arellanos therefore received all benefits to which they were entitled. First American did not attempt to prevent this. The breach of covenant claim should be dismissed as to First American.

4. "A successful fraud claim must prove a misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive and to induce the other party to act upon it, and upon which the other party relies to his detriment." Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd., 113 N.M. 9, 14, 820 P.2d 1323, 1328 (1991)(Citation omitted.) Dona Ana made no representations to the Arellanos or Montoya. The fraud claim against Dona Ana should be dismissed.

5. There is no evidence that anyone at First American made a representation to the Arellanos or Montoya. However, even if the

Title Commitment constitutes a representation, it was not untrue. The Title Commitment was an accurate representation of the state of the title of the property. Notably, there was no representation that no policy would be issued unless all requirements were satisfied. The fraud claim against First American should also be dismissed.

6. "In New Mexico, 'a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages.'" <u>Chavez v. Desert Eagle Distributing Co. of N.M.</u>, 141 N.M. 116, 119, 151 P.3d 77, 80 (Ct. App. 2006), <u>cert. denied</u>, 141 N.M. 164, 152 P.3d 151 (2007) (<u>quoting</u> <u>Herrera v. Quality Pontiac</u>, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003)). "The proximate cause of an injury is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred." <u>Cano v. Lovato</u>, 105 N.M. 522, 535, 734 P.2d 762, 775 (Ct. App.), <u>cert denied</u>, 104 N.M. 246, 719 P.2d 1267 (1986). Neither Dona Ana nor First American breached any duty to the Arellanos; both Defendants correctly identified the state of the title and reported that to Citifinancial and Montano. Furthermore, the Court finds that the proximate cause and cause in fact of the Arellano's damages were the actions taken by

Citifinancial and Montoya. Therefore, the Court finds that nothing done by either Dona Ana or First American could have been the proximate cause of any injury in this case. The negligence claims should be dismissed against both Dona Ana and First American.

7. The elements of prima facie tort are 1) an intentional and lawful act, 2) an intent to injure the plaintiff, 3) injury to the plaintiff as a result of the intentional act, and 4) the absence of justification for the injurious act. <u>Kitchell v. Public Service Co. of New Mexico</u>, 126 N.M. 525, 529, 972 P.2d 344, 348 (1998). Neither of the title company defendants took part in the closing, and neither were aware of the injury that took place at closing. There is nothing in the record that shows that either title company intended to injure the plaintiff. The prima facie tort claims against Dona Ana and First American should be dismissed.

8. The Unfair Trade Practices Act defines "unfair or deceptive trade practice" and "unconscionable trade practice" as follows:

> D. "unfair or deceptive trade practice" means ... a false or misleading oral or written statement ... which may, tends to or does deceive or mislead any person...
>
> E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

> (1) takes advantage of the lack of knowledge,
> ability, experience or capacity of a person to a
> grossly unfair degree; or
> (2) results in a gross disparity between the value
> received by a person and the price paid.

N.M. Stat. Ann. § 57-12-2.  First, the Unfair Practices Act does not apply to sales of real estate.  <u>McElhannon v. Ford</u>, 134 N.M. 124, 129, 73 P.3d 827, 832 (Ct. App. 2003).  Therefore, the only possible application of the UPA would be in connection with either providing the title company services or the financing for the purchase of the property.  The facts establish that neither Dona Ana or First American made a false or misleading oral or written statement regarding provision of title company services.  And, neither title company was involved with the financing.  Therefore, the UPA causes of action should be dismissed as to both Dona Ana and First American.

9.   Count 4 alleges that Dona Ana was the closing agent and violated duties as closing agent.  The undisputed facts show that these allegations are false.  Therefore, any claim that Dona Ana violated its duties as closing agent should be dismissed.

**<u>CONCLUSION</u>**

The Court finds that there are no disputed material facts and that Dona Ana and First American are entitled to judgment as

a matter of law.  An Order will enter dismissing both Dona Ana and First American from this adversary proceeding.[3]

*/s/ James S. Starzynski*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  February 25, 2008

copies to:

R Trey Arvizu, III
PO Box 1479
Las Cruces, NM 88004-1479

James A Askew
PO Box 1888
Albuquerque, NM 87103-1888

Robert H Jacobvitz
500 Marquette NW Ste 650
Albuquerque, NM 87102-5309

---

[3] The foregoing discussion, together with Plaintiffs' (wisely) not contesting the summary judgment motion, raises the question of whether Dona Ana or First American should have been dismissed from the action upon request once the operative facts became known.  See Rule 11 1993 Amendments Advisory Committee Notes:
> The rule continues to require litigants to "stop-and-think" before initially making legal or factual contentions.  It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable....